UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VITTORIO ABBRUZZINO,                              Case No. 08-11534

                    Plaintiff,                    Robert H. Cleland
v.                                                United States District Judge

DR. HUTCHITON, *et al*.,                          Michael Hluchaniuk
                                                  United States Magistrate Judge
                    Defendants.
_____/

## REPORT AND RECOMMENDATION
## ON DEFENDANTS' MOTION TO DISMISS (Dkt. 10)

## 1.    PROCEDURAL HISTORY

Plaintiff, Vittorio Abbruzzino, is a prisoner in the custody of the State of

Michigan.  (Dkt. 1).  Pursuant to 42 U.S.C. § 1983, plaintiff filed a complaint

against defendants on April 9, 2008, alleging that they violated his constitutional

rights.  *Id*.  Plaintiff sought to proceed under the provisions of 28 U.S.C.

§ 1915(a), which allows a party to file a complaint without payment of customary

court fees.  (Dkt. 2).  On April 15, 2008, plaintiff's application to proceed *in forma*

*pauperis* was granted.  (Dkt. 3).  District Judge Robert H. Cleland referred this

matter to the undersigned for all pre-trial matters on April 23, 2008.  (Dkt. 6).

Defendants filed a motion to dismiss on June 2, 2008, asserted that plaintiff failed to exhaust his administrative remedies and fails to state a claim.  (Dkt. 10).  Plaintiff filed a response on June 20, 2008 and defendants filed a reply on June 23, 2008.  (Dkt. 14, 15).  Plaintiff also filed a supplemental memorandum of law in support of his response on July 7, 2008.  (Dkt. 17).

For the reasons set forth below, it is **RECOMMENDED** that defendants' motion to dismiss (which the Court will treat as a motion for summary judgment) claiming that plaintiff failed to exhaust his administrative remedies should be **DENIED** and that defendants' motion to dismiss claiming that plaintiff failed to state a claim for deliberate indifference to his serious medical needs should be **DENIED**.

## II.    STATEMENT OF FACTS

### A.    Plaintiff's Complaint

According to plaintiff's complaint, when he entered prison in July, 2005, he already had an open and infected leg wound.  (Dkt. 1).  He claims he was denied appropriate medical treatment for two and one half years until surgery was finally performed on his wound in January, 2008.  (Dkt. 1).  Plaintiff claims that defendant Paula Meyers treated him from 2005 until August of 2006 and that he

had an open, draining wound during that entire period.  Plaintiff then states he was

at a different facility from August, 2006 until December, 2006.   From December,

2006, until he filed his complaint, plaintiff was housed at a facility in Jackson,

Michigan, where he alleges that defendant "Dr. Hutchiton" is the "main doctor."

(Dkt. 1).  According to plaintiff, his open wound was draining the entire time he

was in custody, including at the Jackson correctional facility where he alleges that

defendant Dr. Hutchinson is the "main doctor," until the surgery was performed in

January, 2008.  (Dkt. 1).

      B.    <u>MDOC Grievance Policy Directive</u>

In conjunction with their dispositive motion, defendants submitted a copy of

the applicable MDOC policy directive that sets forth the grievance procedures in

effect at the time plaintiff submitted his grievance.  (Dkt. 22, Ex. A, MDOC Policy

Directive 03.02.130, eff. 7/9/07).  The MDOC grievance procedure explains that

"[g]rievances may be submitted regarding alleged violations of policy or

procedure or unsatisfactory conditions of confinement which directly affect the

grievant, including alleged violations of this policy and related procedures."  (Dkt.

22, Ex. A, p. 1, § E).  The grievance procedure also requires that the information

provided "is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who,

what when, where, why, how)" and  that "[d]ates, times, places and names of all

those involved in the issue being grieved are to be included."  (Dkt. 22, Ex. A, p.

4, § R).  Grievants are encouraged, however, to limit the information in the

grievance form and to state the issue briefly.  *Id*.

Within five business days of attempting to resolve a dispute with staff, a

prisoner may send a completed grievance form to the Step I Grievance

Coordinator designated for the facility.  (Dkt. 22, Ex. A, § V, p. 4).  And, if the

merits of the grievance are addressed, the grievant must be interviewed in order to

"explain the grievance more completely" and to enable the respondent to "gather

any additional information needed to respond to the grievance."  (Dkt. 22, Ex. A,

p. 5, § Y).  If the grievant is not interviewed, the reason must be included in the

written response to the grievance.  (Dkt. 22, Ex. A, p. 5, § Y).  In response to the

Step I grievance, the respondent must identify all policies, rules, or procedures that

are related to the issue or conduct grieved.  (Dkt. 22, Ex. A, p. 5, § Z).  At Step I,

the Grievance Coordinator "shall ensure that a thorough investigation was

completed for each Step I grievance accepted," that the response was reviewed by

the appropriate supervisor, and that a copy of the response is provided to the

grievant by the due date.  (Dkt. 22, Ex. A, p. 5, § AA).

If a grievant is not satisfied with the Step I response or does not receive a timely response, he may request an appeal of the Step I grievance to Step II. (Dkt. 22, Ex. A, p. 5, § BB). If the Grievance Coordinator determines that the Step II grievance should be accepted, he must then assign an appropriate respondent. *Id*. The MDOC grievance procedure sets forth the appropriate respondents for Step II, depending on the location and subject matter of the grievance. (Dkt. 22, Ex. A, pp. 5-6, § DD). For example, if a grievance alleges inadequate medical care, the Regional Health Administrator or designee is the appropriate Step II respondent. *Id*. The Grievance Coordinator must then ensure that "any additional investigation was completed as necessary for each Step II grievance accepted...." (Dkt. 22, Ex. A, p. 6, § EE).

If a prisoner is not satisfied with the Step II response, he may file a Step III grievance with the Grievance and Appeals Section. (Dkt. 22, Ex. A, p. 6, § FF). A Step III appeal must be sent to the Grievance and Appeals Section within 10 business days after the prisoner receives the Step II response, or within 10 business days after the response was due. *Id*. If a Step III grievance involves medical care or treatment, the Grievance and Appeals Section must forward any such grievance to the Bureau of Health Care Services (BHCS), who must ensure

Report and Recommendation
Defendants' Motion to Dismiss
*Abbruzzino v. Hutchiton, et al*; No. 08-11534

that the grievance is investigated and a timely response provided. *Id*. The

Manager of the Grievance and Appeals Section must ensure that any additional

investigation is completed as necessary for Step III. *Id*.

The MDOC Policy Directive also explains that a grievance *may*[1] be rejected

if it is: (1) vague, illegible, contains multiple unrelated issues, or raises issues that

are duplicative of another grievance already filed by that grievant; (2) the grievant

is on modified access and has filed a grievance in violation of those applicable

procedures; (3) the grievant did not attempt to resolve the issue with the staff

member involved prior to filing of the grievance unless prevented from doing so

by circumstances beyond the grievant's control; or (4) the grievance is filed in an

untimely matter, although, a grievance shall not be rejected as untimely if there is

a valid reason for the delay.  (Dkt. 22, Ex. A, pp. 1-2, § G).

C.    Plaintiff's Grievance

Plaintiff submitted his Step I grievance on November 13, 2007.  (Dkt. 14, p.

14).  According to the grievance, the dates of the "incident" were July 21, 2005 (a

time when plaintiff was allegedly being treated by defendant Meyers) and

---

[1] A grievance coordinator *must* reject grievances that are jointly filed by two or more prisoners or identical individual grievances filed by multiple prisoners as an organized protest, or grievances which raise certain non-grievable issues.  (Dkt. 22, Ex. A, pp. 1-2, § F).

November 13, 2007.  *Id.*  Plaintiff explained that he had written several "kites"[2] to health care and, on November 8, 2007, he asked if he had been approved for a skin graft that was needed on his open wound.  *Id.*  Plaintiff further wrote that he has been in custody since July of 2005 "with an open wound on my leg that hasn't gotten any better."  *Id.*  He stated that he goes to "health care every morning for dressing changes and no progress has been made."  *Id.*  The grievance coordinator acknowledged receipt of the grievance on November 28, 2007, indicating that plaintiff should receive a response by December 19, 2007.  (Dkt. 14, p. 15).

Although nearly illegible, a response to the Step I grievance appears to have been issued on November 30, 2007.  (Dkt. 10, Ex. B, p. 7).  The investigation revealed that a skin graft was recommended on October 31, 2007, that plaintiff had an appointment with a specialist on November 19, 2007, and that approval for the surgery was obtained on November 19, 2007.  *Id.*  As of the date of the response to the Step I grievance, the surgery had not yet been scheduled.  *Id.*  The respondent concluded that plaintiff's healthcare needs were being attended to appropriately and in a timely fashion.  *Id.*  No issues were raised in the response

---

[2] A "kite" is a written informal complaint or request submitted by a prisoner.

2:08-cv-11534-RHC-MJH   Doc # 23   Filed 01/13/09   Pg 8 of 33   Pg ID 187

regarding the failure to identify specific persons who were responsible for his treatment or regarding the timeliness of the grievance.

On December 16, 2007, plaintiff filed a Step II grievance appeal. (Dkt. 14, p. 17). He complained that the response to Step I was insufficient and that his wound had not been dealt with appropriately and in a timely manner for two and one half years and that it was obvious that his wound was not healing. *Id*. Plaintiff's Step II appeal was acknowledged on December 17, 2007, and he was informed that a response was due by January 7, 2008. (Dkt. 14, p. 18). If plaintiff did not receive a timely response to the Step II appeal, he could submit a Step III appeal to the Director's Office. *Id*. On January 7, 2008, plaintiff wrote to the grievance coordinator stating he did not receive a Step II response and requested a Step III form. (Dkt. 14, p. 20). Plaintiff was told that his Step III form was located at the bottom of his Step II form, along with the address to which he should send it. *Id*. at 21. The Step II response is dated January 4, 2008. (Dkt. 10, Ex. B, p. 5). Plaintiff claims that he received the Step II response on January 17, 2008. (Dkt. 14, p. 17).

Plaintiff's Step III appeal is undated, but it is stamped "received" on February 4, 2008. (Dkt. 14, p. 17). Plaintiff wrote that "I'm late on Step 3

because my response on Step 2 wasn't given to me on 1-7-08 like it was suppose [sic] too [sic], plus I was in the hospital having surgery." *Id*. He wrote that he was "doing his Step 3 because it still doesn't make it right that health took over 2 ½ years" to perform the skin graft and during this period, his wound was infected and he had a lot of pain before they finally did the surgery. *Id*. Plaintiff's Step III grievance was rejected as untimely filed. (Dkt. 14, p. 22). The respondent wrote that plaintiff "does not dispute the fact that the Step II response was returned to the grievant on 1/14/08." *Id*. Thus, according to the respondent, plaintiff was required to file a Step III appeal within 10 days of that date, but he did not do so until February 4, 2008. *Id*. The Step III response does not address plaintiff's claim that the delay was due to his confinement to the hospital for surgery. *Id*.

D.   <u>Motion to Dismiss</u>

Defendants assert two reasons that plaintiff's complaint should be dismissed. The first reason is that, according to defendants, plaintiff failed to exhaust his administrative remedies. Specifically, defendants claim that plaintiff failed to try to resolve the issue with staff within two days of its occurrence and then failed to file his grievance within five days after attempting to resolve it with staff. (Dkt. 10, p. 5). Defendants argue that the date of the "incident" was July 21,

2005, but that plaintiff did not file a grievance until November 13, 2007, making the grievance untimely. *Id.* In addition, defendants argue that plaintiff failed to timely file his Step III grievance appeal, given that the Step II response was provided to plaintiff on January 14, 2008 and he submitted his Step III appeal on February 4, 2008. (Dkt. 10, pp. 5-6).

Defendants also claim that plaintiff's attempt to exhaust was insufficient because he failed to specifically name Dr. Hutchinson or Paula Meyer in his grievance, in violation of the MDOC grievance procedure. (Dkt. 10, p. 6). Further, plaintiff's grievance was filed well over a year after he was treated by defendant Meyer, and after he was transferred to another facility. *Id.* Defendant also points out that, according to plaintiff's complaint, Dr. Hutchinson is the "main doctor at Jackson." However, according to defendants's brief, Dr. Hutchinson's office is not in Jackson and he is not one of the medical service providers at the Cooper Street Correctional Facility. *Id.*

The second reason for defendants' motion to dismiss is that plaintiff's complaint fails to rise to the level of a constitutional violation. (Dkt. 10, p. 7). Specifically, according to defendants, plaintiff fails to allege that he did not receive any treatment at all or that the allegedly delayed surgery caused him any

complications.  *Id*.  Defendants also find fault with plaintiff's complaint because he fails to make any specific allegations against defendants or describe how they violated his constitutional rights.  (Dkt. 10, pp. 7-8).  According to defendants, plaintiff is merely dissatisfied with his medical treatment, which is insufficient to rise to the level of a constitutional violation.  (Dkt. 10, p. 8).

      E.    <u>Plaintiff's Response</u>

According to plaintiff's response, he did not receive the Step II response until January 17, 2008.  (Dkt. 14, p. 1).  Plaintiff claims that the grievance was *sent* to him on January 14, 2008, and he received it on January 17, 2008, while he was in the hospital.  (Dkt. 14, p. 2).  Plaintiff also asserts that his Step III appeal was submitted on January 28, 2008, within the 10 business day deadline, as shown on the disbursement authorization request form for United States mail, dated January 28, 2008.  (Dkt. 14, p. 2, App. A).  Further, plaintiff argues that his hospitalization was a valid reason for any delay.  Thus, according to plaintiff, his Step III grievance was timely submitted and improperly rejected.  *Id.*  Plaintiff also argues that he named the medical staff in his grievance and in his complaint.  *Id*. Plaintiff argues that he states a claim for deliberate indifference based on the

undue delay in medical care and the resulting pain and suffering.  (Dkt. 14, pp. 3-7).

In his supplemental memorandum, plaintiff again asserts that his Step III submission was timely and also states that he did not "grieve Paula Myer's at Pussley Corr. Fac., because I was waiting for approval for surgery then I rode out to another facility."  (Dkt. 17, p. 1).  Plaintiff further claims that he was in severe pain, on pain medications, and that it would be inappropriate for this Court to fault him for failing to navigate these procedural hurdles when he did not have a lawyer.  (Dkt. 17, pp. 1-2).  Plaintiff also argues that, under *Jones v. Bock*, the failure to name specific persons in the grievance is not fatal.  (Dkt. 17, pp. 3-5).

## III.   DISCUSSION

### A.   Standards of Review

#### 1.   Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007), quoting, *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  A plaintiff is also obliged "to provide

the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007), quoting, *Twombly*, 127 S.Ct. at 1964-65 (citations and quotation marks omitted).

And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of complaint's allegations are true." *Id.*, quoting, *Twombly*, at 1965 (internal citation and quotation marks omitted); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (The factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.").

*Twombly* also referred to "plausibility" as the measure of pleading sufficiency, stating that allegations must "nudge[ ] ... claims across the line from conceivable to plausible" to survive a motion to dismiss, but cautioned that it was not adopting or applying a "heightened pleading standard." *Id.* at 1974.  As one district court recently observed, the "plausibility" standard has caused some

confusion and uncertainty in the federal courts.  *Interspan Distribution Corp. v. Liberty Ins. Underwriters, Inc*., 2008 WL 905354, *8 (S.D. Tex. 2008).

The Third Circuit concluded that it is related to the requirement of a Rule 8 "showing," which only requires notice of a claim and its grounds, as opposed to a pleader's bare averment that he wants relief and is entitled to it.  *Interspan*, at *8, citing, *Phillips v. Allegheny Co.*, 515 F.3d 224, 234 (3d Cir. 2008) (internal citations and quotation marks omitted).  "The Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element[]."  *Phillips*, 515 F.3d 224 at 234.  The Second Circuit has summarized *Twombly* as endorsing "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible."  *Interspan*, at *8, quoting, *Iqbal v. Hasty*, 490 F.3d 143, 157-158 (2d Cir. 2007).

      The Sixth Circuit recently recognized that in *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197 (2007), "a case decided just two weeks after *Twombly*, the Supreme Court clarified *Twombly* by holding that a prisoner bringing a § 1983 claim against his captor is not required to state [s]pecific facts in their complaint;

and *Twombly* itself suggests that its holding may be limited to cases likely to produce sprawling, costly, and hugely time-consuming litigation." *U.S. v. Ford Motor Co.*, 532 F.3d 496, 503 n. 6 (6th Cir. 2008) (internal citations and quotation marks omitted), citing, *Iqbal*, 490 F.3d at 157-158. The Sixth Circuit applied a more stringent pleading standard in *U.S. v. Ford* because a fraud claim was involved, which requires the application of the heightened pleading standard set forth in Rule 9(b), rather than the more liberal pleading standard found in Rule 8(a)(2). Such is not the case here. Thus, when applying *Twombly*, the Court must still read plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 *U.S.* 519 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Erickson v. Pardus*, 127 S.Ct. at 2200 (The Court of Appeals improperly departed "from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to "liberally construe" the *pro se* complaint at issue.).

      2.    Summary judgment

    Rule 12(d) also provides that, if the moving party presents and the Court relies on matters *outside* the pleadings, "the motion [under Rule 12(b)(6)] must be treated as one for summary judgment and disposed of as provided in Rule 56. All

parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d). Thus, the plain language of the rule requires that if the motion relies on outside materials that the Court considers, then the motion "must" be converted into a motion for summary judgment pursuant to Rule 56. *See* *Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993). With respect to defendants' argument that plaintiff failed to exhaust his administrative remedies, the parties submitted, and the undersigned has considered, evidence that is outside the pleadings. Thus, in this respect, the Court will treat defendants' motion as one for summary judgment under Rule 56, rather than a motion to dismiss under Rule 12(b)(6).

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the evidence and all reasonable inferences must be construed in favor of the nonmoving party. *Tanner v. County of Lenawee*, 452 F.3d 472, 477 (6th Cir. 2006). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for [his] motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which [he] believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

B.    Exhaustion

1.    Burden of proof

In *Jones v. Bock*, the United States Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." *Id*. at 923. The Court defined the level of detail necessary to exhaust as simply compliance with the administrative grievance process. *Id*. Moreover, the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Id*. Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise. *Kramer v. Wilkinson*, 226 Fed.Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

_____2.    Purpose of exhaustion requirement.

The Supreme Court defines proper exhaustion under 42 U.S.C. § 1997e(a) as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2385, quoting, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 2386.  The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id*. at 2387, quoting, *Porter v. Nussle,* 534 U.S. 516, 525 (2002) (alteration omitted).  Exhaustion serves a dual purpose:  it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id*. at 2387-88.  Additionally, the exhaustion requirement "has the potential to

reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones*, 127 S.Ct. at 915-16.

Before *Jones* invalidated the additional exhaustion procedures placed on prisoner civil rights suits by the Sixth Circuit, a prisoner was required to "file a grievance against the person he ultimately seeks to sue," and exhaust the claim as to each defendant associated with the claim. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001). The critical holding in *Jones* was that the PLRA does not impose additional exhaustion procedures or requirements outside the prison's grievance procedures.[3] As observed in *Jones*, the primary purpose of a grievance is to alert prison officials of a particular problem, "not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation." *Jones*, 127 S.Ct. at 923, quoting,

---

[3] In its discussion of the former MDOC policy, which did not require prisoners to name particular persons in a grievance, the Supreme Court noted that "the MDOC grievance form does not require a prisoner to identify a particular responsible party, and the respondent is not necessarily the allegedly culpable prison official, but rather an administrative official designated in the policy to respond to particular types of grievances at different levels." *Jones*, 127 S.Ct. at 922. While the updated grievance procedure is applicable in this case, the MDOC grievance form has not been updated since *Jones*. Unless a prisoner reviews the grievance procedure, which is noted to be available in the prison library, there is nothing on the grievance form to alert a prisoner of the requirement to name all those "involved" in the circumstances of his grievance. (*See* Dkt. 10, Ex. B, p. 6).

*Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004); *see also*, *Bell v. Konteh*, 450 F.3d 651, 651 (6th Cir. 2006) ("[I]t is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint.").  As such, "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances." *Jones*, 127 S.Ct. at 923.  Prison officials in the present case have not claims that they did not receive "fair notice" of plaintiff's alleged mistreatment.

> 3. Defendants have not met their burden of proving that plaintiff failed to exhaust his administrative remedies.

The 2000 MDOC Policy Directive at issue in *Jones v. Bock* does not contain the requirements that a grievance "shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what when, where, why, how)" and that "[d]ates, times, places and names of all those involved in the issue being grieved are to be included."  After *Jones*, despite the requirement of the updated MDOC policy directive to name those involved in the issue being grieved, in many circumstances, a prisoner's failure to specifically name individuals who are later named in a lawsuit will not be deemed a failure to exhaust.  For example, in *Grear v. Gelabert*, 2008 WL 474098, *7-8 (W.D. Mich. 2008), the prisoner named

"health care staff" in a grievance.  Prison officials did not, however, reject the grievance for failure to identify the specific persons about whom he was complaining.  *Id.* at 8.  The court concluded that, because prison officials did not rely on this default by rejecting the grievance, the claim was exhausted as to *all* health care staff, including those named in the lawsuit.  *Id.*  In this case, for example, plaintiff wrote in Step I that he continually wrote kites to "healthcare" and that received dressing changes every morning from "healthcare."  (Dkt. 14, p. 14).  Just as in *Grear*, plaintiff's Step I grievance was not rejected as unduly vague or for a failure to identify specific healthcare personnel and the respondent addressed the grievance on the merits.  *See also Contor v. Caruso, 2008 WL 878665, *8 (W.D. Mich. 2008)* (Prison officials cannot rely on the procedural rule barring review of a grievance where the grievance was not rejected at any step of the process for failure to identify specific CMS personnel).

Nothing in *Jones v. Bock* or *Woodford* altered the well-established principle that when merits of a grievance are addressed, any claimed procedural defect not raised during the administrative process is waived and cannot form the basis of a failure to exhaust defense.  District Judge Paul Maloney recently examined the application of *Jones* and *Woodford* in circumstances where the updated MDOC

policy directive governed and the inmate failed to identify all persons later sued in the underlying grievance. *Baker v. Vanderark*, 2007 WL 3244075 (W.D. Mich. 2007). In *Baker*, the defendants argued that the plaintiff failed to exhaust his administrative remedies with respect to certain individuals who were not named in his grievance, but who were later named in his lawsuit. *Id.* at *6. Judge Maloney distilled the defendants' argument as follows: "In effect, Defendants argue this Court may conclude a grievant did not exhaust his or her administrative remedies even if the MDOC addressed the issue on the merits." *Id.* Judge Maloney rejected this argument and concluded that it was inconsistent with the policies underpinning *Woodford*. Under the PLRA and *Woodford*, "both parties are obligated to raise objections in the administrative proceedings in order for the issue to be properly before a reviewing court." *Id.* at *7. If the Court accepted defendants' position, a prisoner would never have notice that his grievance did not comply with the grievance procedure. Further, accepting defendants' position would place the burden of raising an objection only on a prisoner and not on the persons administering the grievance process. This interpretation is inconsistent with the exhaustion doctrine and the purpose of the PLRA: "[w]hen prison officials fail to raise procedural problems during the grievance process, too many

suits make it to federal courts on a record where the procedural problem has not been adequately developed." *Id.* at \*7.

Judge Maloney also concluded that a "fair interpretation of PD 03.02.103 gives the Grievance Coordinator discretion to accept or reject a grievance that fails to identify specific defendants on the basis of the grievance being vague." *Id*. Rather than dismissing the grievance on a procedural issue and allowing the prisoner to address any procedural concerns, the defendants opted to address the grievance on the merits. *Id.* at \*7. And, if needed additional information was required, the policy provides that the interview is the time to gather that information. Judge Maloney concluded that "[b]y accepting the grievance, investigating the claim, and responding on the merits all the way through Step III of the procedure, [the defendants] cannot now raise a procedural problem for the first time in this Court." *Id.*

Other courts, including this district, have reached the conclusion that *Woodford* is not controlling because it did not involve a situation where a grievance was addressed on the merits. *See e.g.*, *Broder v. Correctional Medical Services, Inc.*, 2008 WL 704229, \*2 (E.D. Mich 2008) ("Where the prison officials themselves overlook a prisoner's failure to comply with procedural requirements

and address the prisoner's grievance on the merits, the procedural default rule established by *Woodford* is inapplicable."); *see also* Johnson v. Beardslee, 2007 WL 2302378 (W.D. Mich. 2007) (finding exhaustion satisfied because MDOC accepted the grievance and addressed it on the merits rather than rejecting it or denying it as untimely); *Ellis v. Vadlamudi*, 568 F.Supp.2d 778, 785 (E.D. Mich. 2008) (Exhaustion held sufficient where on-going medical care complaint at issue and grievance addressed on merits). As set forth in the grievance procedure, a grievance may be rejected if it is either too vague (which includes the failure to name all persons involved) or where an inmate fails to attempt informal resolution with staff. Since the grievance at issue was not rejected, and it was addressed on the merits, any procedural defect as to failure to attempt to informally resolve the dispute, the timeliness of the grievance, or the lack of specific identities of the "health care" staff was waived. Plaintiff alleges that defendant Hutchinson was the "main doctor" at the facility where he was housed when he filed his complaint. While defendants purport to dispute this fact in their brief, they offer no evidence to the contrary. Thus, there is no basis to grant summary judgment in defendant Hutchinson's favor based on a failure to exhaust administrative remedies. Questions relating to whether defendant Hutchinson was responsible for plaintiff's

Report and Recommendation
Defendants' Motion to Dismiss
*Abbruzzino v. Hutchiton, et al*; No. 08-11534

care at any time could be the subject of a separate motion after discovery or additional presentation of evidence on this issue.

Additionally, defendants' argument that plaintiff failed to exhaust his administrative remedies because his Step III grievance was untimely submitted should also be rejected. Regardless of whether plaintiff received the Step II response on January 14, 2008 or January 17, 2008, the Step III appeal was required to be submitted, at the earliest, by January 28, 2008. According to the documents attached to plaintiff's response to the motion to dismiss, he submitted his Step III grievance appeal to prison officials for mailing on January 28, 2008. Defendants argument that prison officials did not *receive* the Step III grievance appeal until February 4, 2008 is immaterial to the timeliness analysis. The MDOC grievance procedure provides that the Step III appeal must be *sent* within 10 business days of plaintiff's receipt of the Step II response. (Dkt. 22, Ex. A, p. 6, § FF). Moreover, even if the alternate deadline of 10 business days from when the Step II response *should* have been given to plaintiff were used (making the deadline January 21, 2008), the prison officials reviewing the Step III appeal failed to acknowledge or address that any potential timeliness issue was likely related to plaintiff's hospitalization, which, on its face, would appear to be a valid

excuse for any purported delay.  Thus, the undersigned suggests that plaintiff's

Step III appeal was timely submitted and that it was improperly rejected by prison

officials.  For the all the foregoing reasons, the undersigned suggests that

exhaustion of the grievance was sufficient and that defendants' motion for

summary judgment on this issue should be denied.

     C.    <u>Plaintiff Has Sufficiently Stated a Claim</u>.

Defendants assert that plaintiff fails to state a claim for violation of his

Eighth Amendment rights because he merely "disagrees" with the treatment

provided.  They essentially argue that, because some treatment was provided, there

cannot be "deliberate indifference" as a matter of law.  The undersigned suggests

that defendants have overstated the legal constraints placed on Eighth Amendment

claims and the requirements for stating such a claim.

The Supreme Court has recognized the responsibility of the courts "to

scrutinize claims of cruel and unusual confinement." *Rhodes v. Chapman*, 452

U.S. 337, 352 (1981).  Included as a type of conduct that violates the Eighth

Amendment is a prison official's deliberate indifference to a prisoner's serious

medical needs. *See e.g.*, *Estelle v. Gamble*, 429 U.S. 97 (1976); *Westlake v. Lucas*,

537 F.2d 857, 860 (6th Cir. 1976).  To succeed on a claim of deliberate

indifference, plaintiff must satisfy two elements, an objective one and a subjective one. He must show that he had a serious medical need and he must show that a defendant, being aware of that need, acted with deliberate indifference to it. *Wilson v. Seiter*, 501 U.S. 294, 300 (1991). In evaluating plaintiff's complaint for purposes of a motion to dismiss, it is important to emphasize that he need not *prove* his claims at this stage, but rather, his complaint, viewed indulgently, need only have "enough factual matter (taken as true) to *suggest* the required element." *Phillips*, 515 F.3d 224 at 234 (internal quotation marks omitted; emphasis added).

A medical need is "serious" if it has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention. *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.), cert. denied, 486 U.S. 1006 (1988). A serious ailment requires immediate attention or is potentially life-threatening: "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (citation omitted), overruled on other grounds, *WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir. 1997). The fact that a plaintiff endured unnecessary pain and suffering is

sufficient for an Eighth Amendment claim. *Id.*  In *Westlake v. Lucas*, the Sixth

Circuit held that "a prisoner who is needlessly allowed to suffer pain when relief is

readily available does have a cause of action against those whose deliberate

indifference is the cause of his suffering." *Westlake*, 537 F.2d at 859.

Based on these standards, at a minimum, plaintiff has alleged the existence

of a "serious medical need," sufficient to survive a motion to dismiss, given his

allegations of an untreated open wound for over two years, and the delay in

performing surgery to address his condition.  Thus, the allegations in plaintiff's

complaint, taken as true, satisfy the first element of *Wilson*.

The second element of *Wilson* requires allegations that defendants acted

with deliberate indifference.  "Deliberate indifference" has been variously defined

by the federal courts that have considered prisoners' Eighth Amendment claims,

but all agree that it is more than mere negligence and less than actual intent in the

form of "malicious" or "sadistic" action. *Farmer v. Brennan*, 511 U.S. 825, 861

(1994); *see also Estelle*, 429 U.S. at 105-106 (a complaint that a physician has

been negligent in diagnosing or treating a medical condition does not state a valid

claim under the Eighth Amendment; "medical malpractice does not become a

constitutional violation merely because the victim is a prisoner"); *Sanderfer v.*

*Nichols*, 62 F.3d 151, 154 (6th Cir. 1995) (deliberate indifference is the equivalent of "criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm"); *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992) ("[o]bduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference").

As noted in *Estelle*, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.  An allegation of mere negligence in diagnosis or treatment is not actionable under § 1983.  *Estelle v. Gamble, supra*; *Byrd v. Wilson*, 701 F.2d at 595 n. 2.  A delay in access to medical attention, however, can violate the Eighth Amendment when it is "tantamount to 'unnecessary and wanton infliction of pain.'" *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1187 (6th Cir. 1994), quoting, *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir.) (*per curiam*), cert. denied, 496 U.S. 928 (1990).  Further, a claim of inadequate medical treatment may state a constitutional claim if the treatment rendered is "so woefully inadequate as to amount to no treatment at all." *Westlake v. Lucas*, 537 F.2d 857, 860-861 (6th Cir. 1976).

Here, plaintiff has not merely alleged that defendants "negligently" failed to diagnose his condition or treat his symptoms. Rather, plaintiff claims that they so inappropriately treated his condition that he unnecessarily suffered for over two years and delayed the surgery. The allegations in plaintiff's complaint fall within the scope of *Westlake v. Lucas*. Thus, plaintiff's complaint contains allegations sufficient to satisfy the second prong of *Wilson*, so as to survive a Rule 12(b)(6) motion, where such allegations must be liberally construed in his favor.

Defendants also argue that plaintiff's complaint fails to sufficiently allege their personal involvement, as required for a § 1983 claim. Again, bearing in mind that this is a motion to dismiss, not a motion for summary judgment, a plaintiff may establish the subjective factor in several ways. As the Supreme Court has explained, whether "a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842 (internal citation omitted). In this case, plaintiff alleges that he kited healthcare on several occasions and that his open wound was obvious to all the personnel who observed or treated him, particularly

given that his dressing was changed by various medical personnel daily, for over two years.[4]  Taking these allegations as true and liberally construing them in plaintiff's favor, the undersigned suggests that plaintiff has satisfied the thresholds of Rules 12(b)(6) and 8(a) as to defendants.

## IV.   RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that defendants' motion to dismiss (which has been treated as a motion for summary judgment) claiming that plaintiff failed to exhaust his administrative remedies should be **DENIED** and that defendants' motion to dismiss claiming that plaintiff failed to state a claim for deliberate indifference to his serious medical needs should be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d

---

[4] While defendant Hutchinson claims that he did not work at the facility in Jackson, as claimed by plaintiff in the complaint, no evidence to this effect has been offered.  Nothing in this Report and Recommendation should be construed to limit defendant Hutchinson from bringing a motion for summary judgment on the issue of whether he was involved in, or aware of, plaintiff's care and treatment.

Report and Recommendation
Defendants' Motion to Dismiss
*Abbruzzino v. Hutchiton, et al*; No. 08-11534

505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others

with specificity will not preserve all the objections a party might have to this

Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931

F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829

F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any

objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 10 days after service of an

objection, the opposing party must file a concise response proportionate to the

objections in length and complexity.  The response must specifically address each

issue raised in the objections, in the same order, and labeled as "Response to

Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines any

objections are without merit, it may rule without awaiting the response to the

objections.

Date: January 13, 2009

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on January 13, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send electronic notification to the following: Ronald W. Chapman, Kimberley A. Koester, and Carly A. Van Thomme, and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:  Vittorio Abbruzzino # 226307, BARAGA MAXIMUM CORRECTIONAL FACILITY, 13924 Wadaga Road, Baraga, MI 49908-9204.

s/James P. Peltier
Courtroom Deputy Clerk
U.S. District Court
600 Church Street
Flint, MI 48502
(810) 341-7850
pete_peltier@mied.uscourts.gov

Report and Recommendation
Defendants' Motion to Dismiss
*Abbruzzino v. Hutchiton, et al*; No. 08-11534